**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SUNSTREAM CORPORATION, INC.,**

**Plaintiff,**

**v.** **Case No.: 8:24-cv-2424-WFJ-AAS**

**STEFAN PETROV and**
**BOATING WORLD PRO SHOP, LLC,**

**Defendants,**
__________________________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Sunstream Corporation (Sunstream) moves for entry of default judgment against Defendants Stefan Petrov and Boating World Pro Shop, LLC (Boating World). (Doc. 65). Sunstream also moves to dismiss Mr. Petrov's counterclaims. (*Id.*). The defendants did not respond to the motion. For the reasons below, the undersigned **RECOMMENDS** that Sunstream's motion be **GRANTED**.

## I. PROCEDURAL HISTORY AND BACKGROUND

On October 18, 2024, Sunstream filed a fifteen-count Complaint, asserting claims for breaches of contract, fraudulent inducement, tortious interference, unfair competition, violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA, Fla. Stat. § 501.201 *et seq.*), violations under

the Lanham Act for false advertising, violations for unfair competition under the Lanham Act, and for specific performance and injunctive relief arising out of an Asset Purchase Agreement, Restrictive Covenant Agreement, and Employment Agreement (collectively, the Agreements). (Doc. 1).

Sunstream is in the business of designing, manufacturing, and selling various boat lifts, cover systems, and other boating accessories throughout the State of Florida. (*Id.* at ¶ 8). Sarasota Boating World is a Florida Limited Liability Company formerly owned by Mr. Petrov as the sole member. (*Id.* at ¶ 10.).

On October 23, 2023, Sunstream entered into an Asset Purchase Agreement and a Noncompetition, Nonsolicitation, Noninterference, and Confidentiality Agreement (Restrictive Covenant Agreement) with Sarasota Boating World and Mr. Petrov. (*Id.* at ¶¶ 11, 28). On October 20, 2023 Sunstream entered into an Employment Agreement with Mr. Petrov. (*Id.* at ¶ 35).

Under the Asset Purchase Agreement, Sarasota Boating World transferred ownership of substantially all its assets to Sunstream, including all intellectual property. (*Id.* at ¶ 11). Sunstream alleges the Restrictive Covenant provisions restricted enumerated actions through the date of October 20, 2028 (five years from the date of the agreement). (*Id.* at ¶ 32). The Employment Agreement included a Restrictive Period defined as a "period of

twenty-four months following the termination of Employee's employment with Company . . . regardless of cause." (*Id.* at ¶ 38).

Sunstream alleges Sarasota Boating World and Mr. Petrov breached the Asset Purchase Agreement through various inaccurate representations and warranties. (*Id.* at ¶¶ 22–27, 57–66). Sunstream also alleges Mr. Petrov breached the Restrictive Period of the Employee Agreement and Restrictive Covenant Agreement. (*Id.* at ¶¶ 73–82). On February 5, 2024, Sunstream terminated Mr. Petrov and alleges the Restrictive Period under the Employment Agreement remained effective until February 5, 2026. (*Id.* at ¶¶ 43–44). Despite the Restrictive Period remaining in effect, Sunstream alleges that Mr. Petrov formed Boating World Pro Shop, LLC and violated various provisions of the Agreements. (*Id.* at ¶ 45).

On June 21, 2024, Sunstream sent Mr. Petrov a cease-and-desist letter demanding compliance with the terms of the Agreements. (*Id.* at ¶ 52). Sunstream alleges Mr. Petrov failed to comply and so Sunstream filed this Complaint.

On January 21, 2026, the undersigned ordered the defendants to show cause by February 27, 2026, as to why a default should not be entered against them for failing to comply with court orders. (Doc. 51). The Order to Show Cause also warned Boating World that failure to obtain counsel and show cause by February 27, 2026 would result in a default being entered against

Boating World. (*Id.*). The defendants failed to show cause by the deadline. Consequently, on March 3, 2026, the Clerk of the Court entered a clerk's default against the defendants. (Docs. 55, 59, 60).

On April 2, 2026, Mr. Petrov responded to the Order to Show Cause. (Doc. 64). The response is untimely, does not demonstrate good cause, and supports a finding of continued disregard for court orders. The defendants have also failed to comply with a previous order and pay Sunstream the $2,313.55 award of attorney's fees. *See* (Doc. 47).

Sunstream moves to dismiss the defendants' counterclaims and for default judgment and "specifically seeks (1) an award of damages in the amount of at least $53,264.00 against Petrov for his breaches of the Asset Purchase Agreement; (2) an injunction enjoining Petrov from violating the restrictive covenants set forth in Sections 2, 3, and 4 of his Noncompetition, Nonsolicitation, Noninterference and Confidentiality Agreement with Sunstream for a period of five (5) years from the entry of judgment; (3) an injunction enjoining Petrov from violating the restrictive covenants set forth in Section 10 and 11 of his Employment Agreement with Sunstream for a period of twenty-four (24) months from entry of judgment; and (4) a permanent injunction enjoining Defendants from representing, advertising, or suggesting that Boating World Pro Shop is in any way affiliated or connected with

Sarasota Boating World, LLC or Sunstream." The defendants failed to respond to Sunstream's motion for default judgment and the time to do so has expired.

## II. JURISDICTION

Jurisdiction over this action is proper. The court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because Sunstream and the defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000.

The court also has federal-question jurisdiction over this matter under 28 U.S.C. § 1331 because it involves claims arising under the Federal Lanham Act, 15 U.S.C. § 1501 *et seq*. The court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367(a) because all other claims arise from the same case or controversy as the Lanham Act claims.

## III. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant. Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan*

*v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment under Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the court must then determine the appropriate damages and enter final judgment in that amount. *See Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

## IV. ANALYSIS

The complaint alleges fifteen counts: Breach of Contract – Asset Purchase Agreement against Mr. Petrov (Count I); Fraudulent Inducement against Mr. Petrov (Count II); Breach of Contract – The Agreements against Mr. Petrov (Count III); Tortious Interference against Mr. Petrov (Count IV); Tortious interference against Boating World Pro Shop (Count V); Common Law

Unfair Competition against Mr. Petrov (Count VI); Common Law Unfair Competition against Boating World Pro Shop (Count VII); Violation of the FDUTPA against Mr. Petrov (Count VIII); Violation of the FDUTPA against Boating World Pro Shop (Count IX); Lanham Act False Advertising against Mr. Petrov (Count X); Lanham Act False Advertising against Boating World Pro Shop (Count XI); Lanham Act Unfair Competition against Mr. Petrov (Count XII); Lanham Act Unfair Competition against Boating World Pro Shop (Count XIII); Specific Performance / Injunctive Relief against Mr. Petrov (Count XIV); and Injunctive Relief against Boating World Pro Shop (Count XV). In the motion for default judgment Sunstream requests some, not all, of the relief pleaded in the complaint.

Sunstream specifically pursues default judgment on its claims for Mr. Petrov's breach of the Asset Purchase Agreement (Doc. 65, pp. 20−21), Mr. Petrov's breach of the Restrictive Covenant Agreement and Employment Agreement (*Id.* at pp. 21−23), and unfair competition and permanent injunctive relief against both defendants (*Id.* at pp. 23−25). Therefore, the undersigned will analyze liability under Counts I, III, VI, VII, XIV, and XV. *See BMO Harris Bank, NA v. DTL Transp., Inc.*, No. 616CV2238ORL37KRS, 2017 WL 4861468 at *3 (M.D. Fla. Aug. 23, 2017), *report and recommendation adopted*, No. 616CV2238ORL37KRS, 2017 WL 4054506 (M.D. Fla. Sept. 14, 2017) (analyzing liability under the counts addressed in the motion for default

judgment). In the same motion, Sunstream moves to dismiss the defendants' counterclaims.

### A. The defendants' Counterclaims Should be Dismissed

Sunstream moves to dismiss Mr. Petrov's counterclaims for failing to comply with the court's orders and failing to prosecute its claims. (Doc. 65, pp. 18–20). Federal Rule of Civil Procedure 41(b), (c) permits a counterclaim defendant to move to dismiss claims for failure to prosecute or comply with a court order. The Eleventh Circuit has stated, "a dismissal with prejudice, whether on motion or sua sponte, is an extreme sanction that may be properly imposed only when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanction would not suffice." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1338–39 (11th Cir. 2005) (quotation and citation omitted).

The defendants engaged in a clear pattern of delay. The defendants' non-responsiveness and failure to obey court orders begins with the defendants' failure to respond to the plaintiffs' motion to compel despite being directed to respond (Doc. 42). The court granted the motion to compel and ordered the defendants to pay the plaintiff's attorney's fees. The defendants failed to comply with the order and pay the attorney's fees.

The defendants further delayed the proceeding by failing to acknowledge the plaintiff's communication attempts to schedule mediation in compliance

with the court's case management and scheduling order. The non-responsiveness caused the plaintiff to move for sanctions. (Doc. 44). The court set a hearing for the motion for sanctions and ordered the defendants and their counsel to appear in person for the hearing. (Doc. 46). The defendants failed to appear.

Then, the undersigned ordered the defendants to show cause in writing by February 27, 2026, as to why default should not be entered against them for failure to appear in person and for failing to comply with the order requiring the parties to schedule court ordered mediation. (Doc. 51). After entry of a clerk's default, Mr. Petrov filed an untimely response to the Show Cause Order on April 2, 2026.

In the response Mr. Petrov asserts "[s]ince early February 2026, Defendant has actively engaged in this case, including Responding to opposing counsel regarding scheduling and extensions . . .." (Doc. 64). However, as of April 10, 2026, Sunstream states "Sunstream has not received any communications from Defendants or their counsel since January 20, 2026, when Defendants' counsel withdrew . . . ." (Doc. 65, p. 17). The defendants did not respond to the motion for default judgment.

Accordingly, it is recommended that the defendants' counterclaims be **DISMISSED with prejudice** because the defendants engaged in a clear

pattern of delay and contumacious conduct for which lesser sanctions would not suffice.

**B. Default Judgment is Appropriate**

Default judgment is appropriate because, as explained, the defendants have demonstrated a willful disregard for this court's orders. The court ordered Mr. Petrov and Boating World to show cause by February 27, 2026, and warned the failure to comply may result in default being entered. (Doc. 51). The defendants failed to comply.

Mr. Petrov submitted an untimely response on April 2, 2026. (Doc. 64). The response did not demonstrate good cause or excusable neglect for failure to comply with court orders or otherwise participate in the litigation. The untimely response combined with the defendants' non-responsiveness throughout the proceedings demonstrates a continued willful disregard for the court's orders and warrants entry of default judgment. *See Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x. 908, 911 (11th Cir. 2011) (finding default judgment justified, in part, because the defendant "exhibited a pattern of inexplicably evasive behavior, underscored by his repeated failure to comply with the court's orders").

**C. Liability**

**i. COUNT I - Breach of Contract against Mr. Petrov**

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; a breach of such contract; and (3) damages resulting from breach." *Senter v. JP Morgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (citing *Knowles v. C.I.T. Corp.*, 346 So.2d 1042, 1043 (Fla. 1st DCA 1977)).

Sunstream alleges the Asset Purchase Agreement is a valid and enforceable contract between Mr. Petrov, Sarasota Boating World, and Sunstream. (Doc. 1, ¶ 57). Sunstream alleges Mr. Petrov breached the Asset Purchase Agreement and Sunstream suffered at least $53,264.02 in damages from Mr. Petrov's breach. (Docs. 1, ¶¶ 57–66; 65 at pp. 20–21).

Section 1.1 of the Asset Purchase Agreement required Mr. Petrov to sell all the assets listed on Schedule 1.1(a) to Sunstream. *See* (Doc. 1, ¶ 58). Mr. Petrov included tools valued at $1,209.00 in Schedule 1.1(a). Sunstream alleges Mr. Petrov breached the Asset Purchase Agreement because Mr. Petrov failed to deliver the tools, despite including a representation and warranty in Schedule 1.1(a) of the Asset Purchase Agreement that Sarasota Boating World had tools valued at $1,209.00. (*Id.* at ¶ 64).

Mr. Petrov also included a 2007 Ford F-150, transmission, and truck engine valued at $16,426.00 in Schedule 1.1(a). However, Sunstream pleads the true value of the Ford F-150, truck, transmission, and truck engine is $7,000. Consequently, Sunstream alleges Mr. Petrov breached the Asset

Purchase Agreement by warranting the F-150's value was worth $9,426.00 more than its true value. (*Id.* at ¶ 64).

In addition, as part of the Asset Purchase Agreement, Sunstream agreed to assume only specifically enumerated liabilities. Petrov and Sarasota Boating World jointly and severally represented to Sunstream that "Seller does not have any [undisclosed] Liability (and there is no basis for any present or future action, suit, proceeding, hearing, investigation, charge, complaint, claim or demand against it giving rise to any Liability), except, for Liabilities set forth in Schedule 2.5." (*Id.* at ¶ 61). Sunstream alleges Mr. Petrov breached the contract because following the closing of the transaction, Sunstream discovered three undisclosed liabilities. (*Id.* at ¶ 64). Sunstream alleges it was required to refund three deposits Sarasota Boating World accepted before entering into the Asset Purchase Agreement: (1) in the amount of $15,464.34 because a customer's automatic boat cover system failed to work properly; (2) in the amount of $13,582.34 because a customer did not have the necessary clearance for the automatic boat cover system; and (3) in the amount of $13,582.34 because a customer did not have the necessary clearance for the automatic boat cover system. (*Id.*).

Accordingly, based on Sunstream's well-pleaded facts of the complaint, which are admitted by default, it is **RECOMMENDED** Mr. Petrov be found liable for Count I, breach of the Asset Purchase Agreement.

#### ii. Count III – Breach of Contract against Mr. Petrov

Sunstream alleges Mr. Petrov breached the restrictive covenants contained in the Restrictive Covenant Agreement and the Employment Agreement. (Doc. 1, ¶¶ 73–82). Both agreements are valid and enforceable contracts between Mr. Petrov and Sunstream. (*Id.* at ¶ 73). The Agreements and their restrictions are intended to protect the legitimate business interest of Sunstream and are reasonably limited in scope. (*Id.* at ¶¶ 74–77). *See Convergent Nonprofit Sols., LLC v. Wick*, No. 619CV1157ORL40DCI, 2019 WL 7423549 at *6 (M.D. Fla. Sept. 5, 2019) ("For a restrictive covenant to be valid, the agreement must foster a legitimate economic interest of the plaintiff and be reasonably limited both geographically and regarding its duration.").

Section 2, the Non-competition Section, of the Restrictive Covenant Agreement provided Mr. Petrov would not engage in, or acquire an interest in any company that is engaged in, the business of selling boat lifts, covers, ports and docks, and other boating accessories in the State of Florida for five years from the execution of the Restrictive Covenant Agreement. (*Id.* at ¶ 30).

Section 3, the Non-solicitation Section, of the Restrictive Covenant Agreement provided Mr. Petrov would not solicit business from Sunstream's customers or solicit, employ, or entice away from Sunstream any employee or former employee of Sarasota Boating World who was employed by Sunstream prior to the Closing Date and who has agreed to be, or has been, employed or

retained by Sunstream within 6 months to such solicitation, employment, retention, interference or enticement. (*Id.*).

Section 4, the Non-Interference Section, of the Restrictive Covenant Agreement generally provided Mr. Petrov would not encourage customers to sever or alter their relationship to Sunstream or discourage a prospective customer from becoming a customer of Sunstream. (*Id.*).

The Restrictive Covenant Agreement dictates Mr. Petrov agreed to be bound by the restrictions set forth in Sections 2, 3, and 4 for the Restrictive Period, defined as beginning the date of the Agreement and ending on the fifth anniversary of the Agreement. The parties entered into the Agreement on October 20, 2023. Consequently, the Restrictive Period does not expire until October 20, 2028.

Similarly, Mr. Petrov agreed to Non-Competition and Non-Solicitation provisions in the Employment Agreement for a Restrictive Period defined as a period of twenty-four (24) months following Mr. Petrov's termination. Because Sunstream terminated Mr. Petrov's employment on February 5, 2024, the Restrictive Period of the Employment Agreement was in effect under February 5, 2026.

Sunstream alleges Mr. Petrov violated Sections 2, 3, and 4 of the Restrictive Covenant Agreement and Sections 10 and 11 of the Employment Agreement. Upon review, Sunstream's well-pleaded facts, accepted as true,

support finding Mr. Petrov liable for breaching the Agreements. Mr. Petrov violated the Agreements by forming (on or about March 12, 2024) Boating World Pro Shop, LLC and thereafter attempting to compete with Sunstream and to solicit Sunstream's customers and employees during the Restrictive Period of both Agreements. (Doc. 1, ¶¶ 45–51, 53, 54, 78,79).

Accordingly, it is **RECOMMENDED** Mr. Petrov's be found liable for Count III, breach of the Restrictive Covenant Agreement and Employment Agreement.

### iii. Counts VI and VII – Unfair Competition

"Unfair competition under Florida common law requires deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion." *Escal Inst. of Advanced Techs., Inc. v. Treadstone 71, LLC*, No. 2:23-CV-630-SPC-KCD, 2024 WL 4149864 at *4 (M.D. Fla. Sept. 11, 2024) (quoting *Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020)).

Sunstream alleges Mr. Petrov (Count VI) and Boating World Pro Shop (Count VII) are liable for unfair competition. Sunstream became the owner of substantially all of Sarasota Boating World's assets, including its trade name and intellectual property. Despite this, Mr. Petrov and Boating World Pro Shop sent a marketing email to the former clients of Sarasota Boating World with the subject "Sarasota Boating now Boating World Pro Shop" and represented: "While our name my have changed, we are still committed to offering the same

high-quality products and services you have known us for." Sunstream further alleges the home page of boating World Pro Shop's website states, "[as the former Sarasota Boating World, we continue to uphold our legacy of quality and service." (Doc. 1, ¶ 47). Boating World is a competitor of Sunstream because it is engaged in the same business of selling boating equipment throughout the State of Florida. (*Id.* at ¶¶ 47, 50). Mr. Petrov and Boating World Pro Shop's deceptive conduct is likely to cause confusion among customers.

Sunstream's well-pleaded facts, accepted as true, support finding Mr. Petrov and Boating World Pro Shop liable for unfair competition. Accordingly, it is **RECOMMENDED** Mr. Petrov and Boating World be found liable for Unfair Competition under Counts VI and VII.

#### iv. Counts XIV and XV – Specific Performance and Injunctive Relief

Sunstream requests injunctive relief again Mr. Petrov (Count XIV) and Boating World Pro Shop (Count XV). Injunctive relief is a remedy, rather than a separate cause of action or proper claim for relief. *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015) Accordingly, Counts XIV and XV, which both request "Specific Performance / Injunctive Relief" are considered in the undersigned's recommendation on determining Sunstream's damages.

### D. Remedies

Sunstream requests the following remedies: (1) damages in the amount of at least $53,264.02 against Mr. Petrov for his breaches of the Asset Purchase Agreement; (2) injunctive relief barring Mr. Petrov from violating the restrictive covenants set forth in Sections 2, 3, and 4 of the Restrictive Covenant Agreement for a period of five years from entry of judgment; (3) injunctive relief barring Mr. Petrov from violating the restrictive covenants set forth in Sections 10 and 11 of the Employment Agreement for a period of twenty four months from entry of judgment; (4) permanent injunctive relief barring the defendants from representing, advertising, or suggesting that Boating World Pro Shop is affiliated or connected with Sarasota Boating World or Sunstream; (5) entitlement to attorney's fees and costs pursuant to the Agreements between the parties and § 501.2105, Fla. Stat; and (6) other relief the court deems just and equitable.[1]

After liability is established, federal courts then address the terms of the judgment. *Rustik Haws, LLC v. Identiqa Sols. Co.*, No. 8:21-CV-00565-MSS-AEP, 2025 WL 470225 at * 14 (M.D. Fla. Feb. 12, 2025). "A default judgment must not differ in kind from or exceed in amount, what is demanded in the

[1] In the motion for default, Sunstream also request the dismissal of Mr. Petrov's counterclaims with prejudice and an order holding the defendants jointly and severally liable for the $2,313.55 of attorney's fees previously awarded to Sunstream.

pleadings." Fed. R. Civ. P. 54(c). The moving party bears the burden of proving unliquidated or unspecified monetary sums in a hearing on damages or otherwise. *Rustik Haws*, 2025 WL 470225 at *14; *see* Fed. R. Civ. P 55(b)(1)–(2). The court must ensure there is a legitimate basis for awarding damages, and ensure damages are not awarded solely because of a defendant's failure to respond. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). However, well-pleaded damages are admitted by a default, and a hearing on damages may not be necessary. *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

Sunstream's damages are well-pleaded and for a sum certain. The damages are admitted by default and no hearing is necessary. The complaint, motion for default judgment, and supporting affidavit show the claimed damages are capable of precise mathematical calculation and that the damages are reasonable. *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (finding that a court may grant default judgment and award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation"). The undersigned recommends the court enter default judgment on Count I in Sunstream's favor

against Mr. Petrov for $53,264.02 plus prejudgment interest and post judgment interest.[2] (*See* Docs. 1, ¶ 64).

In addition, Sunstream's complaint, motion for default judgment, and supporting affidavit show Sunstream is entitled to specific performance, in the form of an injunction to compel Mr. Petrov's compliance with the Restrictive Covenant Agreement and the Employment Agreement. "Specific performance is an equitable remedy that may be granted at the discretion of the trial court if Plaintiff shows 1) it is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it." *FX Grp., LLC v. Astorga*, No. 8:20-CV-468-TPB-JSS, 2021 WL 8200229 at *7 (M.D. Fla. Sept. 27, 2021), *report and recommendation adopted sub nom. FX Grp., LLC v. Vision Mgmt. & Ent., LLC*, No. 8:20-CV-468-TPB-JSS, 2021 WL 8200228 (M.D. Fla. Oct. 12, 2021) (quotation and citation omitted).

Sunstream successfully alleged Mr. Petrov breached the restrictions in the Agreements and further alleges there is no adequate remedy at law. (Doc. 1, ¶¶ 186, 191). Accordingly, as to Count III, the undersigned recommends

---

[2] In diversity cases, the court follows Florida state law governing the award of prejudgment interest. *Royster Co. v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir. 1984). Florida courts allow an award of prejudgment interest in cases involving contract, tort, unjust enrichment, and fraudulent inducement claims. *See Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42 (Fla. 2010). Without a special contract for the prejudgment rate, the rate of interest is stated in § 55.03, Fla. Stat. *IberiaBank v. Coconut 41*, LLC, 984 F. Supp. 2d 1283, 1299 (M.D. Fla. 2013) (citing Fla. Stat. § 687.01).

ordering specific performance in the form of injunctive relief barring Mr. Petrov from violating the restrictive covenants set forth in Sections 2, 3, and 4 of the Restrictive Covenant Agreement for a period of five years from entry of judgment and injunctive relief barring Mr. Petrov from violating the restrictive covenants set forth in Sections 10 and 11 of the Employment Agreement for a period of twenty four months from entry of judgment. *See Astorga*, 2021 WL 8200229 at *7, *report and recommendation adopted*, 2021 WL 8200228 (M.D. Fla. Oct. 12, 2021) (recommending "Plaintiff is entitled to the remedy of specific performance, in the form of an injunction to compel compliance with the non-compete and non-disclosure agreements.").

Further, Sunstream's complaint, motion for default judgment, and supporting affidavit show it is entitled to injunctive relief as to Counts VI and VII against the defendants. "Indeed, injunctive relief is the remedy of choice for trademark infringement and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Ethos Grp., Inc. v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097 at *5 (M.D. Fla. May 25, 2023), *report and recommendation adopted*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070 (M.D. Fla. June 26, 2023) (quotation and citation omitted).

"[A] plaintiff seeking a permanent injunction must . . . demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law,

such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The allegations in Sunstream's complaint establish the necessary elements for a permanent injunction. (Doc. 1, ¶¶ 185–88, 190–93). Accordingly, it is recommended Mr. Petrov and Boating World be permanently enjoined from representing, advertising, or suggesting that Boating World Pro Shop is in any way affiliated or connected with Sarasota Boating World or Sunstream.

Sunstream also requests entitlement to attorney's fees and costs pursuant to the Agreements between the parties and Section 501.2105, Fla. Stat. (Docs. 1, ¶¶ 66, 82; 65, p. 26). The complaint and motion for default judgment sufficiently allege Sunstream is entitled to attorney's fees under the Agreements. Section 7 of the Restrictive Covenant Agreement states, "the prevailing Party shall also be entitled to recover from the other Party its reasonable attorneys' fees and out-of-pocket expenses incurred in such litigation." (Docs. 1, ¶¶ 33, 66, 82; 65, pp. 11, 26). Accordingly, it is recommended the court conclude Sunstream is entitled to attorney's fees and permit Sunstream to file a supplemental motion to determine to the reasonable amount of attorney's fees.

Last, Sunstream requests an order stating that the defendants are jointly and severally liable for the $2,313.55 of attorney's fees previously awarded (Doc. 47) to Sunstream. (Doc. 65, p. 26). On January 12, 2026, the court ordered fee shifting in the amount of $2,313.55 against the defendants in favor of Sunstream. Accordingly, it is recommended the requests for the $2,313.55 in attorney's fees be denied as moot because the defendants are already jointly and severally liable for the requested amount, which should be included in the judgment. *See* (Doc. 47).

## V. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Sunstream's motion for default judgment (Doc. 65) be **GRANTED in part** to the extent Sunstream should be entitled to the relief it requests in the motion for default judgment. The following is recommended:

1. The motion for default judgment should be **DENIED without prejudice** on the counts that Sunstream did not address, specifically, Counts II, IV, V, VIII, IX, X, XI, XII, and XII. *Sealy, Inc. v. Mordaunt-Barrett*, No. 6:07-cv-270-ORL-28KRS, 2008 WL 2704408, at *2 (M.D. Fla. July 8, 2008) (finding the motion was "insufficient on its face" because the motion did "not discuss the elements of either its causes of action or show how the well-pleaded

allegations of the complaint establish each element of each cause of action").

2. The motion for default should be **DENIED** as to Counts XIV and XV because specific performance and injunctive relief are remedies, not causes of action themselves.

3. The motion for default should be **GRANTED** as to Counts I, III, VI, and VII.

4. Under Count I, Breach of the Asset Purchase Agreement against Mr. Petrov, Sunstream should be awarded $53,264.02 plus prejudgment and post judgment interest.

5. Under Count III, Breach of the Employment and Restrictive Covenant Agreements against Mr. Petrov Sunstream should be granted specific performance in the form of injunctive relief. Specifically, it is recommended the court Order that Mr. Petrov be enjoined from violating the restrictive covenants set forth in Sections 2, 3, and 4 of the Restrictive Covenant Agreement for a period of five years from entry of judgment. In addition, it is recommended the court Order Mr. Petrov be enjoined from violating the restrictive covenants set forth in Sections 10 and 11 of the Employment Agreement.

6. Under Counts VI and VII, Unfair Competition against Mr. Petrov and Boating World, it is recommended the defendants be permanently enjoined from any future ongoing unfair competition including representing, advertising, or suggesting that Boating World pro Shop is in any way affiliated or connected with Sarasota Boating World, LLC or Sunstream.
7. The defendants' counterclaims be **DISMISSED with prejudice** because the defendants engaged in a clear pattern of delay and contumacious conduct for which lesser sanctions would not suffice.
8. Sunstream is entitled to attorney's fees and should be permitted to file a separate motion to determine the amount of reasonable attorney's fees.
9. The court **DENY as moot** the defendants' request the court order the defendants are jointly and severally liable for the $2,313.55 of attorney's fees previously awarded because the defendants are already liable for the amount and so it already should be included in the judgment. *See* (Doc. 47).

**ENTERED** in Tampa, Florida, on August 3, 2026.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

**NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.